IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| TOBY KRISTOPHER PAYNE,<br>Prison ID # 1720023,<br><br>               Plaintiff,<br><br>v.<br><br>STEVEN A. SPERRY, et al.,<br><br>               Defendants. | No. 1:18-CV-0027-BL |

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U. S. C. § 1983, Plaintiff sues five prison officials or employees of the French M. Robertson Unit of the Texas Department of Criminal Justice for failing to ensure adequate and proper dispensation of medication for tuberculosis in violation of the Americans with Disability Act ("ADA"); the Rehabilitation Act ("RA"); and the Eighth Amendment of the United States Constitution. *See* Compl. (doc. 1) at 3. The Court has granted Plaintiff permission to proceed with this case *in forma pauperis*. *See* PLRA Filing Fee Order (doc. 7). On March 2, 2018, the District Judge referred the case to the undersigned. *See* Order (doc. 8). Plaintiff thereafter consented to have a United States Magistrate Judge conduct any and all further proceedings in this case, including entry of a final judgment, in accordance with 28 U.S.C. § 636(c). *See* Consent to Proceed Before a United States Magistrate Judge (doc. 10).

In August 2018, the Court granted an amendment thus permitting Plaintiff to name the previously unnamed defendants in this action and accepted supplemental exhibits to support his complaint. *See* Order (doc. 15); Supp. Ex. (doc. 16). Contemporaneously with this Memorandum Opinion and Order it has granted a proposed amendment to limit Plaintiff's requested relief to

nominal and punitive damages. It also sent Plaintiff a Magistrate Judge's Questionnaire ("MJQ") to flesh out the factual and legal bases for his claims. *See* MJQ (doc. 17). Plaintiff timely responded to the MJQ. *See* Answers to MJQ (doc. 18).[1] After considering Plaintiff's complaint, the MJQ answers, other relevant filings, and the applicable law, the Court issues this Memorandum Opinion and Order finding that Plaintiff has stated no claim that survives summary dismissal and thus dismisses this action in its entirety.

## I. BACKGROUND[2]

Following a routine test for tuberculosis ("TB") on November 25, 2017, Plaintiff exhibited positive signs for the disease. Answer 2. Three days later he asked a nurse about the signs and "[s]he concluded that it was most likely a positive result." *Id.* Contagious and Infectious Diseases ("CID") examined Plaintiff the next day in his cell, confirmed the positive result, and scheduled Plaintiff to see a medical provider. *Id.* On December 7, 2017, Jackie Gregory, N.P., informed Plaintiff that the "infection was latent and not active" and scheduled monthly follow-up appointments for the duration of the treatment. *Id.*

During the relevant period of time, Plaintiff was housed in either building 8 or 12 due to his custody level. *Id.* Because he was unable to pick up his medication from the pill window while housed in those buildings, Plaintiff had to receive medications at his cell, except for medications that were designated as keep on person ("KOP"). *Id.*; Compl. at 4. His TB medication was ordered to

---

[1]The answers to the MJQ constitute an amendment to the complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994). For ease of reference, the Court will cite to the answers as Answer 1, Answer 2, etc.

[2]The factual background is taken from Plaintiff's complaint and answers to the MJQ. When screening for failure to state a claim, the Court views Plaintiff's factual allegations in accordance with *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009).

be given to him in high doses on Tuesdays and Thursdays, but the "medication was missing from time to time" causing Plaintiff to voice his grievance. Answer 2. Although he was told "the issue would be corrected," it stayed the same. *Id.* Plaintiff "finally had enough" on January 11, 2018, so he covered his "cell door window so that [he] could not be observed which is a serious security issue." *Id.*

Plaintiff also alleges that medication has been interrupted when he moves to a new cell due to staff not informing medical of the cell change. Compl. at 4. He asserts that the burden of informing medical of cell changes is placed on the inmates. *Id.* He also alleges that cell-side distribution of medication results in outdated prescriptions and medical instructions. *Id.* at 5.

Plaintiff commenced this civil action in February 2018. *See* Compl. He has identified five defendants: (1) Warden Steven Sperry; (2) Assistant Warden Jimmy S. Webb; (3) Assistant Warden Monte A. Griffin; (4) Robert Martin, M.D.; and (5) Physician's Assistant Toni Deer. *See* Docs. 13 and 15. He asserts claims under the ADA, RA, and the Eighth Amendment under the same set of facts. *See* Compl. at 3; Answers 2 and 3.

Plaintiff alleges that Defendant Deer became involve in February 2018 when she expressed disagreement with ongoing monthly follow-up appointments scheduled by N.P. Gregory. Answer 5. Deer told Plaintiff that he was merely exposed to TB and was not infected and thus felt monthly scheduled appointments were unnecessary. *Id.* She stated she would cancel the appointments and call him for an appointment if there is a problem. *Id.* About a week later, when Deer examined Plaintiff for an unrelated issue, she expressed disagreement with a change in medication dosage plan ordered by Dr. Martin and stated she would change the medication back to Tuesdays and Thursdays. *Id.*

Plaintiff sues Dr. Martin because he is "the unit's medical director" who "is responsible for all internal medical operations at the Robertson Unit." Answer 9. Although Dr. Martin exhibited some responsiveness to Plaintiff's concerns by changing his prescription in response to a grievance, Plaintiff contends that he remains "responsible for the events" leading to this litigation and "the grievances which put my health in serious jeopardy." *Id.*

With respect to the three wardens, Plaintiff alleges that he informed them of the problems with his medications through letters dated January 11 and April 18, 2018. Answers 6, 7, and 8. He sues them because they are "ultimately responsible for all operations" at the unit. *Id.*

Plaintiff addressed the letter of January 11, 2018, to the "Warden's Office" and explained events of that day, including an initial failure to receive TB medication, Plaintiff covering his door opening with a blanket, and Plaintiff ultimately receiving his medication in the afternoon. *See* Letter from Payne to Warden's Office of Jan. 11, 2018 (attached to Answers to MJQ). The letter also indicates that his "AM pill cup" was missing his TB medication on December 26, 2017, and January 2, 2018. *See id.* The letter of April 18, 2018, was similarly addressed to "Warden's Office" and complained generally that "[t]here are several offenders on my section alone whose KOP pill packs are empty" and "nurses are not bringing our KOP medications to us when they bring non-KOP to us cell-side." *See* Letter from Payne to Warden's Office of Apr. 18, 2018 (same). At no point in that letter does Plaintiff complain of issues particular to him. *See id.*

When asked to describe the physical injury, if any, that he sustained as a result of the alleged conduct of defendants, Plaintiff attempted "to use logic to answer" and stated that, based on his understanding of the disease as described by N.P. Gregory, he feared that missed medication "may have been enough to allow the bacteria to develop a resistance to the treatment and could have

damaged [his] lungs to whatever extent that may be." *See* Answer 4.

In his complaint, Plaintiff seeks injunctive relief to order defendants "to comply with the most effective treatment method to eradicate the tuberculosis bacteria from [his] body." Compl. at 4. He also seeks to recover costs, "possible attorney fees," and an unspecified award for damages. *Id.* However, he recently amended his requested relief to seek only nominal and punitive damages in this action. *See* Pl.'s Mot. Leave Am. Compl. (doc. 29).

Given these facts and background information, the Court now conducts the preliminary screening of this action as contemplated by 28 U.S.C. §§ 1915(e)(2) and 1915A.

## II. SCREENING

Plaintiff proceeds with this case *in forma pauperis*. Therefore, this action is subject to *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2)(B). In addition because he is a prisoner seeking redress from governmental entity or an officer or employee of such an entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A regardless of whether he proceeds *in forma pauperis*. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Both statutes provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court may find a claim frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law, furthermore, when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim lacks an arguable basis in fact, when it describes "fantastic or delusional scenarios." *Id.* at 327-28. A

complaint fails to state a claim upon which relief may be granted, on the other hand, when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). A plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Iqbal*, 556 U.S. at 678 (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The alleged facts must "nudge" an asserted claim "across the line from conceivable to plausible" to avoid summary dismissal. *Id.* at 570.

In this case, Plaintiff sues five defendants for alleged violations of the ADA, RA, and the Eighth Amendment.

## A. Eighth Amendment Claim

Stated succinctly, Plaintiff asserts that each defendant failed to ensure adequate and proper dispensation of his TB medication that had to be provided at his cell. Compl. at 3-4. The Eighth Amendment provides the proper analytical framework for denial-of-medical-care claims filed by

6

convicted inmates "[w]hether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (citation omitted). It is well-established "that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation and internal quotation marks omitted). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

Prison officials violate "the Eighth Amendment only when two requirements are met." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The courts consider (1) whether the alleged deprivation is "objectively, 'sufficiently serious'" such that the act or omission results "in the denial of 'the minimal civilized measure of life's necessities'" and (2) whether the official had a "sufficiently culpable state of mind" in acting or failing to act. *Id.* In other words, there must be an "objective exposure to a substantial risk of serious harm" and "prison officials acted or failed to act with deliberate indifference to that risk." *Gobert*, 463 F.3d 345-46. Both of these inquiries are fact intensive. *Garrett v. Thaler*, 560 F. App'x 375, 380 n.3 (5th Cir. 2014) (per curiam).

Prison officials are deliberately indifferent only when they know of the substantial risk of serious harm faced by the inmate and "disregards that risk by failing to take reasonable measures to abate it." *Gobert*, 463 F.3d at 346 (quoting *Farmer*, 511 U.S. at 834). "Deliberate indifference is an extremely high standard to meet." *Sanchez v. Young Cnty.*, 866 F.3d 274, 280 (5th Cir. 2017). As a matter of law, prison officials are not deliberately indifferent merely because they provide "[u]nsuccessful medical treatment," act negligently, or commit medical malpractice. *Gobert*, 463

F.3d at 346. Absent exceptional circumstances, furthermore, "a prisoner's disagreement with his medical treatment" does not constitute deliberate indifference. *Id.* Additionally, pursuit of further treatment or additional diagnostic techniques are matters of medical judgment that do not constitute cruel and unusual punishment under the Eighth Amendment. *Estelle*, 429 U.S. at 107.

"Deliberate indifference will often be a fact-laden question" which makes it difficult for the courts "to draw bright lines in such an inquiry." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 457 (5th Cir. 1994). Nevertheless, deliberate indifference requires that the acts or failures to act of the prison officials constitute refusing to treat the prisoner, ignoring his complaints, intentionally treating the prisoner incorrectly, or engaging "in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert*, 463 F.3d at 346 (citation and internal quotation marks omitted).

Courts look at the circumstances as a whole when considering whether a prison official knows of a substantial risk of serious harm and responded with deliberate indifference. As alleged in this case, Plaintiff tested positive for TB. Although the disease was not active, medical personnel prescribed treatment. Plaintiff's TB thus qualifies as a serious medical need. Nevertheless, a "positive skin test result does not mean that the person will exhibit symptoms of tuberculosis in the future." *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). Plaintiff does not complain about a complete failure to treat his TB. He instead merely complains that occasionally his medication would be missing.

From his allegations, it appears that his TB medication was missing on three occasions and that, at least on one occasion, the oversight was corrected in the afternoon. He speculates that missed medication might allow the TB bacteria to develop a resistance to treatment and might damage his

8

lungs. Speculation, however, is not sufficient to state a claim upon which relief can be granted. Under the facts alleged by Plaintiff that medication was occasionally missing, the alleged deprivation of medical care does not appear to be objectively sufficiently serious so as to result in a denial of any minimal civilized measure of life's necessities. Occasionally missing medication for non-active TB does not appear to objectively expose Plaintiff to a substantial risk of serious harm. Courts may "appropriately dismiss claims for not involving a serious deprivation" before "reaching the state-of-mind issue." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).

Even if the Court were to deem Plaintiff's allegations adequate to satisfy the objective requirement of a sufficiently serious deprivation, his factual allegations are insufficient to state a claim that any defendant responded with deliberate indifference. His allegations simply fail to satisfy the extremely high standard for deliberate indifference. The Court cannot find on the facts alleged that any defendant refused to treat Plaintiff, ignored his medical complaints, intentionally treated him incorrectly, or engaged in any similar conduct that clearly evinces a wanton disregard for a serious medical need. As Plaintiff states, his prescribed TB medication was occasionally missing. That does not rise to a constitutional violation.

Plaintiff fares no better if the Court were to delve into the specific allegations against the five named defendants. With respect to Defendant Deer, Plaintiff essentially complains about her disagreements with other medical staff. That medical staff may disagree about treatment does not evince a wanton disregard to a serious medical need. Plaintiff makes no specific allegation that Deer refused to treat Plaintiff, ignored his medical complaints, intentionally treated him incorrectly, or engaged in any similar conduct that clearly evinces a wanton disregard for a serious medical need.

Plaintiff sues Dr. Martin, the Unit Medical Director, because he "is responsible for all inter-

nal medical operations at the Robertson Unit." Answer 9. Similarly, he sues the Warden and both Assistant Wardens because they are ultimately responsible for all operations at the unit. *See* Answers 6, 7, and 8. Section 1983, however, provides no basis to hold "supervisory officials . . . liable for the actions of subordinates on any theory of vicarious liability." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir.2001) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir.1987)).

Plaintiff also sues the wardens because they failed to respond when informed of problems with medications on January 11, 2018, and April 18, 2018. Nevertheless, for the reasons previously stated, their lack of response does not amount to a wanton disregard to a serious medical need. The reported January 11, 2018 problem was remedied that afternoon. There is no allegation that any warden refused to treat Plaintiff, ignored his medical complaints, intentionally treated him incorrectly, or engaged in any similar conduct that clearly evinces a wanton disregard for a serious medical need.

For all of these reasons, Plaintiff's denial-of-medical-care claim fails to state a claim upon which relief can be granted.

### B. ADA and RA Claims

Based on the same facts as his Eighth Amendment claim, Plaintiff asserts ADA and RA claims against each of the five individual defendants. While Plaintiff does not identify the specific provisions of these acts, it appears that he alleges violations under Title II of the ADA and section 504 of the Rehabilitation Act.

"The ADA 'forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodation

(Title III).'" *Jefferson v. Loftin*, No. 3:04-CV-1102, 2005 WL 4541891, at *6 (N.D. Tex. Mar. 16, 2005) (accepting recommendation of Mag. J.) (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001)). In pertinent part, Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, as codified in 29 U.S.C. § 794(a), Section 504 of the Rehabilitation Act provides in pertinent part that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." In general, Title II "tracks the language of Section 504" and, by enacting Title II, Congress intended to "extend the protections of the Rehabilitation Act to cover all programs of state or local governments, regardless of the receipt of federal financial assistance and that it work in the same manner as Section 504." *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) (citation and internal quotation marks omitted). Furthermore, "[j]urisprudence interpreting either section is applicable to both." *Id.*

"Title II of the ADA unambiguously extends to state prison inmates." *See Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 213 (1998). And while coverage under the RA is limited by the requirement of federal financial assistance, the two provisions are essentially coextensive. Nevertheless, neither provision provides for relief against any individual. *See Coker v. Dallas Cnty. Jail*, No. 3:05-CV-005-M-BH, 2009 WL 1953038, at *16 n.11 (N.D. Tex. Feb. 25, 2009) (recommendation of Mag. J. citing 42 U.S.C. § 12131), *accepted as modified by* 2009 WL 1953037 (N.D. Tex. July 6, 2009); *Meredith v. Nowak*, No. 06-2384, 2008 WL 4808905, at *4 (E.D. La. Oct. 31, 2008). They

only "provide for relief against public entities." *Coker*, 2009 WL 1953038, at *16 n.11. Because Plaintiff does not sue any entity, his ADA and RA claims are legally frivolous.

Furthermore, to state a claim under either Title II or Section 504, Plaintiff must allege that he "(1) was a qualified individual with a disability, and (2) was excluded from participation in or denied the benefits of the services, programs, or activities of the [prison], or was otherwise subjected to discrimination, (3) because of his disability." *Wright v. Tex. Dep't of Crim. J.*, No. 7:13-CV-0116-O, 2013 WL 6578994, at *2 (N.D. Tex. Dec. 16, 2013). Plaintiff has not alleged that he is a qualified individual with a disability, and even if the Court were to assume he satisfies that first element, his ADA and RA claims fail because he not alleged any exclusion or discrimination because of his disability. When a plaintiff "has failed to allege that he was discriminated against on the basis of disability in a major area of public life," he fails to state a plausible claim upon which relief can be granted under the ADA. *Jefferson*, 2005 WL 4541891, at *6. The same reasoning applies when the plaintiff asserts claims under the RA.

### III. LEAVE TO AMEND

In general, courts should provide pro se litigants an opportunity to amend before dismissing a complaint. *See Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009). Leave to amend is not required, however, when plaintiffs have already pled their "best case." *Id.* Whether to grant leave to amend is within the Court's sound discretion. *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). In this instance, the Court provided Plaintiff an opportunity to factually support his claims through his answers to the court questionnaire. More recently, it granted Plaintiff's proposed amendment to limit his requested relief to nominal and punitive damages. Accordingly, the Court finds that Plaintiff has pled his best case and that there is no basis to

permit any further amendment.

## IV. CONCLUSION

After considering Plaintiff's complaint, his answers to the Court's questionnaire, other relevant filings, and the applicable law, the Court **DISMISSES** this action pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A as frivolous or for Plaintiff's failure to state a claim upon which relief may be granted. This dismissal will count as a "strike" or "prior occasion" within the meaning of 28 U.S.C. § 1915(g).[3]

IT IS SO ORDERED this 1st day of May, 2019.

_____
E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE

---

[3]Section 1915(g) is often referred to as the "three-strikes" provision and provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.